## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Transport Drivers, Inc., T.D.I. Nationwide, L.L.C., Optimum Staffing, Inc., d/b/a Optimum Logistic Services, and Focus Transportation Services, Inc., d/b/a TDI Solutions, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: 14 C 8465 |
| v. | ) ) | Judge Ronald A. Guzmán |
| Kevin P. Roy, Gilbert Apodaca, CPC Logistics, Inc., CPC Services, Inc., and Consolidated Logistics Solutions, LLC, | ) ) ) ) | |
| Defendants. | ) | |

### ORDER

For the reasons stated below, Defendants' motion to dismiss or, in the alternative, to transfer [25] is granted in part. The clerk is directed to transfer this case to the United States District Court for the Central District of California, Eastern Division. All other pending motions are denied as moot. Civil case terminated.

### STATEMENT

Plaintiffs allege that Kevin Roy and Gilbert Apodaca both worked for Transport Drivers, Inc. ("TDI") in high-level positions in its West Coast office and had access to confidential and proprietary information. (Compl., Dkt. # 1-1, ¶¶ 20-29.) In or about late 2013 and early 2014, Roy and Apodaca began conspiring to leave TDI to move to CPC Logisitics, Inc. and CPC Services, Inc., competitors of TDI. (*Id.* ¶ 30.) Specifically, in February 2014, CPC Services set up a new limited

liability company, Consolidated Logistics Solutions, LLC ("CLS"),[1] organized under Missouri law, which was to be structured similarly to plaintiff Optimum Logistic Services and would employ Roy and Apodaca after they left TDI.  (*Id.* ¶ 35.)  While still employed by TDI, Roy set up meetings with clients to convince them to move their business from TDI to CLS, orchestrated the move of two significant accounts from TDI to the CPC Defendants, and became aware of new business, which he waited until after his departure to secure for CLS.  (*Id.* ¶¶ 31, 34.)  While employed by TDI, Apodaca secretly communicated with the CPC Defendants regarding his employment with them, facilitated moving some accounts from TDI to CLS, and did not inform TDI of potential new business.  (*Id.* ¶ 33.)  Roy and Apodaca resigned from TDI in March 2014.

Plaintiffs allege claims for breach of fiduciary duty against Roy and Apodaca (Counts I and V), trade secrets misappropriation against Roy and Apodaca (Counts II and VI), breach of a non-compete agreement against Roy and Apodaca (Counts III and VII), promissory estoppel against Roy (Count IV), inducing breach of fiduciary duty by Roy and Apodaca against CPC Logistics, CPC Services and CLS (Counts VIII and IX), misappropriation of trade secrets against CPC Logistics, CPC Services and CLS (Count X), civil conspiracy against all defendants (Count XI) and a claim for injunctive relief against all defendants (Count XII).

Defendants move to dismiss the case for lack of jurisdiction and improper venue, or, in the alternative, to transfer the case.  The Court addresses the motion for improper venue first.  The facts alleged in the complaint are presumed true for the purpose of resolving the pending motion.  *See Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). The Court also considers any affidavits or

---

[1]  CPC Logistics, Inc., CPC Services, Inc., and CLS are referred to collectively as "the CPC Defendants."

declarations outside of the pleadings.  *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

"When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is

proper." *Jackson v. N'Genuity Enterprises, Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill.

Aug. 28, 2014).  Title 28 U.S.C. § 1391(b) governs venue, which states that:

> b) Venue in general.--A civil action may be brought in--
>
>> (1) a judicial district in which any defendant resides, if all defendants are
>> residents of the State in which the district is located;
>> (2) a judicial district in which a substantial part of the events or omissions
>> giving rise to the claim occurred, or a substantial part of property that is the
>> subject of the action is situated; or
>> (3) if there is no district in which an action may otherwise be brought as
>> provided in this section, any judicial district in which any defendant is
>> subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  The parties agree that subsection (1) does not apply because CLS and the CPC

Defendants reside in Missouri while Roy and Apodaca reside in California.  Defendants further

claim that venue here is improper under subsection (2) because none of the alleged conduct occurred

here.  As another court in this district recently noted:

> The test for determining whether venue is proper under Section 1391(b)(2) is "not
> whether a majority of the activities pertaining to the case were performed in a
> particular district, but whether a substantial portion of the activities giving rise to the
> claim occurred in the particular district."  To meet the substantial portion test, the
> events or omissions must have more than "some tangential connection" to the chosen
> venue.

*Brunswick Corp. v. Thorsell*, No. 13 C 9222, 2014 WL 1612668, at *2 (N.D. Ill. Apr. 21, 2014)

(internal citations omitted).

     In challenging venue in this Court, Defendants argue that Roy and Apodaca worked for

Plaintiffs in California, resigned their employment in California and took new jobs in California;

CLS only operates in California so assuming Plaintiffs' allegations are true, Roy and Apodaca could

only solicit clients in California; and, with respect to the CPC Defendants, they do not service the allegedly solicited customers in Illinois and have had no interaction or contact with those customers in Illinois.  (Mem. Supp. Mot. Dismiss Transfer, Dkt. # 26, at 10.)

Plaintiffs respond that they are victims of torts in Illinois, Plaintiffs' contracts with Roy were based in Illinois, numerous contacts related to this case occurred in Illinois and Roy and Apodaca agreed to this forum.

The Court addresses the last point first.  Plaintiffs note that Apodaca entered into a contract entitled "Agreement" on October 1, 2010, which contains non-solicitation, non-compete and confidentiality provisions.  It also states that "[a]ll actions to enforce any provision of this Agreement shall be brought and prosecuted in a court of competent jurisdiction with venue located in Cook County, Illinois."  (Compl., Dkt. # 1-1, Ex. A.)  A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *Prof'l LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14-CV-2440, 2014 WL 6613012, at *5 (N.D. Ill. Nov. 21, 2014) (citation and internal quotation marks omitted). Apodaca conclusorily contends that he "merely signed off on his employer's boilerplate choice-of-law and forum selection language, without arms-length negotiation or equal bargaining power." (Reply, Dkt. # 35, at 9.)  But he provides no evidence in support of this statement.  Therefore, Apodaca is bound by the forum selection clause with respect to those causes of action against him related to the Agreement.  Thus, under the forum selection clause, venue in this Court is proper as to Apodaca.

While Plaintiffs also allege that Roy agreed to litigate in this district, they point to no contract signed by Roy containing a forum selection clause.  Attached as Exhibit B to the complaint

4

is an excerpt from the TDI Staff Employee Handbook and a page entitled Employee's Receipt, which appears to be signed by Roy on July 26, 2010, acknowledging receipt of the Handbook and that he has "read and understood" the terms contained in the receipt.  But neither the Employee Handbook, as presented, nor the receipt, contains any direct reference to a forum selection clause or consent to jurisdiction.  The Employee Handbook provides that all candidates for employment must sign a non-compete form and that "[i]f the Employee does not sign the non-compete prior to separation of employment, the signed receipt from the Employee [H]andbook will serve as acceptance of the agreement in its condensed version and will revert all questions or guidelines to the original non-compete agreement."  (Compl., Ex. B, ¶ I.)  But it is not clear what the "agreement in its condensed version" or the "original non-compete agreement" are.  Moreover, Plaintiffs fail to point to any authority supporting their position that Roy's signature on the receipt binds him to the forum selection clause contained in the unsigned non-compete agreement they attach as part of their Exhibit B to the complaint.

Thus, as to the claims against Roy, CPC Logistics, CPC Services and Consolidated Logistics Solutions, Plaintiffs must establish that venue is appropriate here.  When, as in this case, "multiple causes of action are joined, venue must be proper as to each one." *Moran Indus., Inc. v. Higdon*, No. 07 C 6092, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (internal quotation marks and citation omitted).  The Court notes, however, that the parties do not discuss venue associated with each cause of action.

As to the breach of the non-compete against Roy[2], "the Court considers a number of factors

---

[2]  The Court assumes the truth of the allegation that Roy verbally accepted his offer of employment with Plaintiffs according to the terms and conditions in the non-compete agreement, which included a one-year non-compete agreement, a non-solicitation provision and an

including where the conduct underlying the breach occurred and where performance under the contract was to take place to determine where a substantial part of the acts giving rise to the claim occurred." *Moran Indus., Inc. v. Higdon*, No. 07 C 6092, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (internal quotation marks and citation omitted). Plaintiffs contend that Roy traveled to Illinois to negotiate and execute his employment agreement, and allege that he breached his non-compete agreement, including the non-solicitation provision, by taking a job with CLS, soliciting Plaintiffs' former, current and potential future clients and using Plaintiffs' confidential information. (Compl., Dkt. # 1, ¶ 72.) Significantly, CLS is located and operates exclusively in California, and does not do any business with customers located or based in Illinois. (Crowell Decl., Dkt. # 26-3, ¶¶ 14-18.) Indeed, Roy attests that he was formerly employed by TDI as its West Coast Regional Vice-President, resigned his employment with Plaintiffs from his California office, negotiated and accepted new employment with CLS in California, works only from CLS's California office, and all CLS customers he services are located in California. (Roy Decl., Dkt. # 26-1, ¶¶ 5-10.)

With respect to the purported breach of the confidentiality provision of the non-compete agreement, Plaintiffs allege that Roy "used [P]laintiffs' confidential information and methodologies to compete with [P]laintiffs." (Compl., Dkt. # 1, ¶ 72.) Again, while Plaintiffs contend that Roy accessed the information from servers located in Illinois and received emails containing confidential information sent from Illinois, Plaintiffs allege that Roy "improperly utilized and misappropriated [P]laintiffs' trade secrets . . . while he was still employed with [P]laintiffs" in California. (*Id.* ¶ 54.) Thus, the basis for Plaintiffs' breach of contract claim lies in conduct that allegedly occurred in

---

agreement to keep confidential Plaintiff's trade secret information. (Compl., Dkt. # 1, ¶¶ 60-61.)

California; Roy did not violate the confidentiality provision simply by obtaining confidential information in or from Illinois. *See Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, No. 2:09-CV-271, 2010 WL 2925970, at *3 (W.D. Mich. July 21, 2010) (finding venue in Michigan improper on conversion claim even where plaintiff was headquartered in Michigan, executed relevant agreement and manufactured products there, defendant traveled to Michigan on several occasions pursuant to agreement, defendant had weekly communications with plaintiff in Michigan, and plaintiff suffered injury in Michigan based on defendant's wrongful acts in California because conversion occurred in California); *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4–5 (D.D.C. 2003) (holding that the District of Columbia was not the proper venue for a contract action based on a breach that occurred in Florida, though the contract was executed in and plaintiff suffered the impact of the breach in the District of Columbia). That Plaintiffs were injured in Illinois is not persuasive. *Fin. Mgmt. Servs., Inc. v. Coburn Supply Co., Inc.*, No. 02 C 8928, 2003 WL 255232, at *2 (N.D. Ill. Feb. 5, 2003) ("[I]f economic harm to a plaintiff were really enough to satisfy Section 1391(a)(2), . . . a plaintiff could always bring suit at its home base on the premise that it has suffered harm there[,]" thus "eviscerating . . . [the other] part[s] [that] Congress has prescribed in the venue statute.").

As to the propriety of venue with respect to the other claims against Roy, CLS, and the CPC Defendants, Plaintiffs, who bear the burden of establishing proper venue, do not specifically address them. Plaintiffs briefly assert that this Court should exercise its discretion and apply the doctrine of pendent venue over the other claims. Pendent venue "allows a court to hear a claim where venue is otherwise lacking if the claim arises out of a common nucleus of fact as the claims where venue is proper." *Hyatt Corp. v. Personal Commc'ns Indus. Ass'n*, 04 C 4656, 2004 WL 2931288, at *5

(N.D. Ill. Dec. 15, 2004).  To determine whether pendent venue is appropriate, the Court must consider judicial economy, the convenience of the parties and fairness.  *Id*.  As an initial matter, Plaintiffs do not address these factors.  Second, some courts have questioned the propriety of extending the pendent jurisdiction doctrine to cases brought under the Court's diversity jurisdiction. *Bond Safeguard Ins. Co. v. LR Buffalo Creek, LLC*, No. 1:08CV434, 2009 WL 2601211, at *18 (W.D.N.C. Aug. 21, 2009) (noting some commentators recognize pendent jurisdiction where pendent claim arises from the same nucleus of operative facts as "properly venued *federal* claim" but questioning extending doctrine to cases solely under court's diversity jurisdiction) (emphasis added).  Pursuant to the Court's analysis, while judicial economy favors deciding the case in one court and this forum is convenient to Plaintiffs, the Court has concluded that the majority of the claims against the majority of the defendants are not brought in the proper venue.  Accordingly, convenience to Defendants and fairness to them weigh in favor of not exercising pendent jurisdiction over the remaining claims.  For these reasons, the Court declines to apply pendent jurisdiction in the instant case.

Defendants ask the Court to transfer the case to the Central District of California.  The Court may, if venue is improper and "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see also Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("Under either section [(28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a))], the district court has broad discretion to grant or deny a motion to transfer the case").  Transfer of the claims against Roy, CLS and the CDC Defendants under § 1406 while retaining the suit against Apodaca in this district would not further judicial economy and would be prejudicial to the corporate parties by requiring them to litigate in two different districts.  Plaintiffs do not dispute that venue

in the Central District of California is appropriate.  Therefore, in the interests of justice and the efficient administration of judicial and party resources, the Court, in its discretion, transfers the whole case to the United States District Court for the Central District of California, Eastern Division.  *Giuliano v. CDSI I Holding Co., Inc*., No. 13 C 2776, 2014 WL 1032704, at *3 (E.D. Pa. Mar. 17, 2014) (in similar circumstances, finding that "the interest of justice and the convenience of the parties will be served by the transfer of all claims to the District of Delaware" because "[t]o do otherwise would force all parties to litigate the claims in two different courts, requiring a duplication of effort both by the parties and the courts involved that would provide no appreciable benefit whatsoever, and many drawbacks.").

For the reasons stated above, Defendants' motion to dismiss or, in the alternative, to transfer is granted in part.  The clerk is directed to transfer this case to the United States District Court for the Central District of California, Eastern Division.  Civil case terminated.

**Date**: March 23, 2015

_____

**Ronald A. Guzmán**
**United States District Judge**

9